UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  5:25-cv-03233-MWC-SP                                                                   Date: December 8, 2025

Title:  Estela Voskanyan v. Pamela Bondi *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:  Order GRANTING IN PART Petitioner's *Ex Parte* Application for Temporary Restraining Order (Dkt. 3).**

    Before the Court is Petitioner Estela Voskanyan's ("Petitioner") *ex parte* application ("Application") seeking a temporary restraining order ("TRO") requiring Respondents Pamela Bondi, Kristi Noem, the U.S. Department of Homeland Security, F. Semaia, and Ernesto Santacruz Jr. (collectively, "Respondents")[1] to immediately release Petitioner on her own recognizance and enjoin them from re-detaining her absent further order of this Court, or, in the alternative, order Petitioner's immediate release from Respondents' custody and enjoin Respondents from re-detaining her unless Respondents demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community, such that her physical custody is required.  Dkt. # 3 ("*App.*") 2.  The Government opposed the Application ("Opposition").  See Dkt. # 6 ("*Opp.*").[2]  For the reasons set forth below, the Court **GRANTS IN PART** the Application and **ORDERS** Petitioner's immediate release unless Petitioner is afforded a pre-

---

[1] The Petition for Writ of Habeas Corpus ("Petition") describes Pamela Bondi as the Attorney General of the United States, Kristi Noem as the Secretary of the Department of Homeland Security ("DHS"), Ernesto Santacruz Jr. as the Acting Field Office Director of the Los Angeles office of Immigration and Customs Enforcement ("ICE"), and F. Semaia as the warden at Adelanto Detention Facility, where Petitioner is being detained.  See Dkt. # 1 ("*Pet.*") ¶¶ 13–17.

[2] Petitioner subsequently filed a Reply.  Dkt. # 7.  This Court's Rules do not permit reply briefs on *ex parte* applications. See Hon. Michelle Williams Court Standing Order ¶ 11, https://apps.cacd.uscourts.gov/Jps/honorable-michelle-williams-court. Accordingly, the Court declines to consider Petitioner's Reply in deciding the Application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  5:25-cv-03233-MWC-SP                                             Date: December 8, 2025

Title:         Estela Voskanyan v. Pamela Bondi *et al.*

deprivation hearing before a neutral arbiter within seven days, at which Respondents will bear the burden of proving by clear and convincing evidence that she is a flight risk or a danger to the community.

I.     Background

    A.     Factual Background

Petitioner is a citizen and national of Armenia who was paroled into the United States on or around October 7, 2023. *App.* 1; *see* Dkt. # 1-3 ("*Lenhert Pet. Decl.*"), Ex. A. The notice to appear served on Petitioner placed her into removal proceedings. *Lenhert Pet Decl.*, Ex. A. Petitioner was released from the custody of Customs and Border Patrol ("CBP") the same day. *App.* 1.

In January 2024, Petitioner filed for asylum in the United States. *Id.* She was actively pursuing her asylum application prior to being detained. *Id.* Petitioner at all times complied with the requirement to report periodically to her local ICE office. *Id.*; *see Lenhert Pet. Decl.*, Ex. B.

On October 14, 2025, ICE agents detained Petitioner at a routine check-in. Dkt. # 3-2 ("*Lenhert Decl.*") ¶ 3; Dkt. # 6-1 ("*Le Decl.*") ¶ 8. Since that date, Petitioner has been detained at Adelanto Detention Facility. *Pet.* ¶ 12. Prior to her detention, Petitioner was given no notice of ICE's intention to re-detain her, nor any information about why her release was revoked. *App.* 1. Petitioner has not received an individualized hearing before a neutral decisionmaker to assess whether her recent re-detention is warranted due to danger or flight risk. *Id.*

    B.     Procedural Background

On December 2, 2025, Petitioner filed a Petition for Writ of Habeas Corpus in this court on the grounds that her detention deprives her of due process protections under the Fifth Amendment of the Constitution and constitutes unlawful arrest under the Fourth Amendment. *Pet.* Petitioner filed the instant Application the same day. *App.*

Respondents oppose Petitioner's Application on several grounds. First, they argue that Petitioner has not submitted evidence demonstrating her parole was improperly revoked. *Opp.* 2–3. Specifically, they argue Petitioner was arrested in March 2025 for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03233-MWC-SP                                    Date: December 8, 2025

Title:       Estela Voskanyan v. Pamela Bondi *et al.*

shoplifting and thus was properly taken into custody based on her criminal arrest.  *See Le Decl.* ¶ 7.  Second, even "if there were some defect in the revocation of Petitioner's parole status," Petitioner has not met her burden to show the relief requested is narrowly tailored to the wrong asserted.  *Opp.* 4–5.  Respondents argue "the narrowly tailored remedy would not be immediate release, but rather (1) rectifying that procedural deficiency; or (2) Petitioner simply seeking a bond hearing consistent with her rights as a detainee."  *Id.*  Third, Petitioner has not demonstrated she will suffer irreparable injury absent her immediate release by TRO.  *Id.* 5–6.  Respondents note, should the Court disagree with their arguments, "relief should be limited to what other Judges in this District have generally issued in similar cases: Requiring release unless a § 1226(a) bond hearing in Immigration Court is provided within seven (7) days."  *Opp.* 6.

II.      Legal Standard

     A.       *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited."  *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)).  "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO."  *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified.  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."  *Id.* at 492.  "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have."  *Id.* at 493 (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 5:25-cv-03233-MWC-SP | Date: December 8, 2025 |
| Title: Estela Voskanyan v. Pamela Bondi *et al.* | |

  B. <u>Temporary Restraining Orders</u>

  Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III. <u>Discussion</u>

  A. <u>*Ex Parte* Application and *Mission Power* Factors</u>

  The Court finds Petitioner has satisfied the *Mission Power* factors. Petitioner has been in custody since October 14, 2025, without access to a bond hearing. *Lenhert Decl.* ¶ 3. If the Court heard the Application according to regularly noticed motion procedures, that would leave Petitioner detained without access to any due process for at least an additional 28 days. Though Petitioner could have sought the TRO sooner, the Court declines to hold against her the fact that she provided ICE time to provide additional due process. After eight weeks in continued detention without a bond hearing, the Court finds *ex parte* relief warranted. *See Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *2 (C.D. Cal. Sept. 8, 2025) ("The Court finds that petitioners' *ex parte* request for relief is appropriate because petitioners allege that their continued detention without bond hearings, which they would be entitled to under 8 U.S.C. 1226(a), constitutes irreparable injury." (citation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03233-MWC-SP                                              Date: December 8, 2025

Title:  Estela Voskanyan v. Pamela Bondi *et al.*

    B.    <u>Request for Release from Detention Unless Bond Hearing Provided in Seven Days</u>

As an initial matter, Respondents do not dispute that the Court has jurisdiction to adjudicate the TRO.  *See generally Opp.*  Accordingly, the Court proceeds to analyze whether Petitioner has met her burden under *Winter* to demonstrate a TRO is warranted.

    *i.*    *Likelihood of Success on the Merits*

Petitioner argues that she is likely to succeed on the merits of her Petition because the Due Process Clause of the Constitution makes it unlawful for Respondents to revoke her release without any notice or any opportunity to contest her detention before a neutral arbiter.  *See App.* 3–8.  The Court agrees and finds that due process requires Respondents to first provide a pre-deprivation hearing before a neutral decisionmaker to determine whether circumstances had materially changed since Petitioner's release on bond in October 2023, such that detention would now be warranted on the basis that, by clear and convincing evidence, she is a danger or a flight risk.

    *a.*    *Procedural Due Process*

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  That interest is particularly weighty when government detention is at issue.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release, since courts have repeatedly recognized that conditional release from physical restraint gives rise to a protected liberty interest.  *See generally Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty); *Young v. Harper*, 520 U.S. 143, 150–53 (1997) (applying *Morrissey* pre-parole).  "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release."  *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03233-MWC-SP                                      Date: December 8, 2025

Title:     Estela Voskanyan v. Pamela Bondi *et al.*

These due process rights apply to noncitizens residing in the United States. The Supreme Court has firmly established that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation omitted)). Once a noncitizen is present in the United States, they have a "weighty" liberty interest in remaining in the United States, as they stand to lose rights to "stay and live and work" in the country and "to rejoin [their] immediate family." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation omitted). That weighty liberty interest remains "regardless of how someone entered the country: '[O]nce passed through our gates, even illegally,' noncitizens 'may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.'" *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *10 (D.D.C. Aug. 29, 2025) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

Accordingly, as numerous courts have held, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); *see also Jorge M.F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. March 1, 2021) (holding a Mexican citizen with pending removal proceedings who had been released on bond had "a substantial private interest in remaining on bond" (citation omitted)).

### 1.     *Applicability of* Mathews v. Eldrige

After determining that due process applies, the outstanding question is "what process is due." *Morrissey*, 408 U.S. at 481. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). When determining what procedures are required by due process, courts apply the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts must consider three factors: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  5:25-cv-03233-MWC-SP | Date: December 8, 2025 |
| Title:  Estela Voskanyan v. Pamela Bondi *et al.* | |

safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures."  424 U.S. at 335.

### 2.  *Private Interest at Stake*

Petitioner gained a liberty interest in her continued freedom when CBP elected to release Petitioner from custody on her own recognizance.  *Lenhert Decl.*, Ex. A; *Pet.* ¶ 37.  This implied a promise that she would not be re-detained so long as she abided by the terms of her release.  *See Salcedo Aceros*, 2025 WL 2637503, at *7; *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *8 (N.D. Cal. Sept. 26, 2025).  Under federal regulations, CBP's decision to release Petitioner necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk.  *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Here, Petitioner attests she has abided by the terms of her release and presents evidence that she has complied with all reporting requirements imposed by DHS and ICE.  *Lenhert Decl.* ¶¶ 2; *Lenhert Pet. Decl.*, Ex. B.

Respondents suggest there was nonetheless a change in circumstances, because Petitioner was arrested for shoplifting in March 2025.  *Opp.* 3:27–4:3; *Le Decl.* ¶ 7.  In support, Respondents submit a declaration from Kevin Le, a DHS Deportation Officer, stating in relevant part that, "[b]ased on her criminal arrest, ICE/ERO conducted a custody re-determination, served [Petitioner] with a warrant of arrest, and took her into ICE custody."  *Le Decl.* ¶ 8.  But Respondents do not explain what a "custody re-determination" consists of, nor do they demonstrate that the declarant has personal knowledge of the process undertaken to "re-determine" Petitioner's custody status.  *See generally Le Decl.*  Respondents also fail to cite any authority suggesting that an arrest for a non-violent crime is sufficient to constitute changed circumstances.  Conversely, Petitioner attests she was afforded no notice or opportunity to be heard before being detained.  For these reasons, the Court does not find Respondents' allegation that ICE conducted a "custody re-determination" demonstrates either that circumstances have materially changed, or that Petitioner was afforded due process.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03233-MWC-SP                                        Date: December 8, 2025

Title:   Estela Voskanyan v. Pamela Bondi *et al.*

    The government's decision to release Petitioner for two years following her initial detention gave her a protected interest in her continued liberty. *Calderon*, 2025 WL 2430609, at *3; *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025). Respondents "cannot now about-face and extinguish these liberty interests by pursuing mandatory detention against Petitioner[]." *Valencia Zapata*, 2025 WL 2741654, at *9.

    The Court finds Petitioner has a significant private interest in her continued liberty, and thus the first *Mathews* factor favors Petitioner.

### 3.   Risk of Erroneous Deprivation

    The Court concludes that the second *Mathews* factor also favors Petitioner. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690 (citation omitted). As described above, Petitioner was released on bond after her initial detention. By releasing Petitioner, immigration officers necessarily determined that she was neither a flight risk nor danger to the community. And Respondents' assertion that Petitioner was arrested for shoplifting in March 2025 does not establish that she has become a flight risk or danger to the community.

    Further, Respondents have adopted the positions that "[t]he INA does not provide for a pre-detention hearing," *Opp.* 3, citing 8 U.S.C. § 1231, and that Petitioner's most narrowly-tailored relief is "simply seeking a bond hearing consistent with her rights as a detainee" under "the existing bond hearing regime," *Opp.* 4. Accordingly, absent an order requiring an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a), the risk of erroneous deprivation of liberty is high, given the possibility that Petitioner's detention is not pursuant to a valid state interest. *See Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025).

### 4.   Respondents' Interest

    This Court joins others in concluding that Respondents' interest in keeping Petitioner detained without opportunity for an individualized bond hearing is low because ICE previously made the determination to release her, and Respondents offer little evidence of changed circumstances that might cause ICE to reconsider its parole determination. *See, e.g.*, *Aviles-Mena*, 2025 WL 2578215, at *6; *Valencia Zapata*, 2025 WL 2741654, at *11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   5:25-cv-03233-MWC-SP | Date: December 8, 2025 |
| Title:   Estela Voskanyan v. Pamela Bondi *et al.* | |

Furthermore, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Becerra*, 2025 WL 691664, at *6).

Because all three *Mathews* factors favor Petitioner, the Court concludes that Petitioner has demonstrated at least a serious question going to the merits of her procedural due process claim.

          b.        *Substantive Due Process*

Petitioner has also shown serious questions going to the merits of her claim as to substantive due process. As described above, freedom from government custody "lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690. For that reason, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted). In the context of civil immigration detention, the two "regulatory goals" of the Immigration and Nationality Act provisions governing such detention—"ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community"—can provide such "special justification." *Id.* (citations omitted); *see also Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Civil immigration detention is permissible only to prevent flight or protect against danger to the community." (citing *Zadvydas*, 533 U.S. at 690)). Although "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," *Hernandez*, 872 F.3d at 990, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions," *id.* at 994. Due process requires that "the nature and duration" of detention "bear some reasonable relation to the purpose for which the individual is" detained. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

Here, Petitioner was released on her own recognizance, which requires a finding that she was neither a flight risk nor a danger to the community. Respondents offer insufficient evidence of changed circumstances that might cause ICE to reconsider its parole determination. Conversely, Petitioner has submitted evidence that she complied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03233-MWC-SP                                              Date: December 8, 2025

Title:    Estela Voskanyan v. Pamela Bondi *et al.*

with all requirements applicable to her immigration proceedings. *Lenhert Pet. Decl.*, Ex. B. As such, the justifications for civil immigration detention were absent from her case. *See Valencia Zapata*, 2025 WL 2741654, at *12. Continuing to detain Petitioner without an individualized bond hearing would lack a valid basis and violate Petitioner's right to be free from impermissible government custody. *See Zadvydas*, 533 U.S. at 690; *see also Gamez Lira v. Noem*, No. 25-cv-00855-WJ-KK, 2025 WL 2581710, at *2–3 (D.N.M. Sept. 5, 2025) (finding the noncitizen petitioner was likely to succeed on a substantive due process claim in connection with his immigration detention because the evidence showed he was not a flight risk).

Accordingly, Petitioner has demonstrated at least a serious question as to whether her detention violates her substantive due process rights by failing to serve any valid purpose.

       *ii.*    *Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court finds that Petitioner would be immediately and irreparably harmed by her continued deprivation of liberty without the bond hearing that she is entitled to under 8 U.S.C. § 1226(a). *See Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013) (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention). Accordingly, this factor weighs in favor of granting the TRO.

       *iii.*    *Balance of Equities and Public Interest*

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As Respondents assert, there is a compelling interest in the enforcement of the nation's immigration laws. *Opp.* 14–15; *see Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). Nonetheless, the balance of equities and the public interest factors favors Petitioner, because she is challenging a policy that is likely in violation of federal law. *See Valle del*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.   5:25-cv-03233-MWC-SP | Date: December 8, 2025 |
| Title:   Estela Voskanyan v. Pamela Bondi *et al.* | |

*Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law.") (citations omitted); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M.F.*, 2021 WL 783561, at *3 (cleaned up).

Even if Respondents later prove Petitioner's detention is necessary to prevent flight or danger to the community, the only adverse consequence Respondents face if the Court grants the TRO is a "short delay" in detaining Petitioner. *Salcedo Aceros*, 2025 WL 2637503, at *14. As such, the balance of equities tip in Petitioner's favor.

Because "there is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** the Application. Respondents must provide Petitioner with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven days of this Order. If Respondents fail to provide Petitioner a bond hearing before an Immigration Judge by **end of day on December 15, 2025**, Respondents must release Petitioner immediately.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| **Initials of Preparer** | TJ |